**ROCKLAND INDUSTRIES, INC.**

v.

**E + E (US) INC., Manley–Regan Chemicals Division.**

**No. Civ. B–95–1978.**

United States District Court, D. Maryland.

April 9, 1998.

Daniel R. Chemers, Barry Cohen, Weinberg & Green, LLC, Baltimore, MD, for Plaintiff.

Stephen H. Kaufman, Levin & Gann, PA, Baltimore, MD, for Defendant.

WALTER E. BLACK, Jr., Senior District Judge.

Presently pending before the Court is plaintiff's Motion for Reconsideration, filed on behalf of Rockland Industries, Inc. ("Rockland"), and defendant's Motion to Alter and/or Amend Judgment and for Reconsideration filed on behalf of E + E (US) Inc., Manley–Regan Chemicals Division ("Manley–Regan"). This breach of contract action was brought by Rockland, a Maryland corporation that manufactures drapery lining fabrics, against Manley–Regan, a Pennsylvania chemical distribution company. On July 5, 1995, Rockland filed a one-count complaint alleging that Manley–Regan breached a contract to provide Rockland with three containers of antimony oxide at an agreed price of $1.80 per pound. The parties agree that Manley–Regan did not supply the antimony oxide to Rockland; however, Manley–Regan claims its performance was excused due to the failure of its agreed sole source. Rockland subsequently covered, purchasing an equivalent amount of antimony from other sources. Rockland seeks the difference between the cost of cover and the contract

price as damages under Md.Code Ann., Com. Law I § 2–712 (1997).

On January 15, 1998, following a four-day bench trial from October 27, 1997 through October 30, 1997, the Court issued an Opinion and Judgment. *Rockland Industries, Inc. v. E+E (US) Inc., Manley–Regan Chemicals Division*, 991 F.Supp. 468 (D.Md. 1998). The Court found first that the parties had agreed on a sole source of supply of antimony oxide. *Id.* at 471. The Court then found that defendant was not excused from performance because the risk of the sole source failing was foreseeable at the time of contracting, thus the commercial impracticability defense of the Uniform Commercial Code ("U.C.C."), § 2–615, was inapplicable. *Id.* at 471–72. Consequently, the Court awarded cover damages to plaintiff under § 2–712 in the amount of $56,945.08 after determining that Rockland's cover purchases were reasonable. *Id.* at 473–74. The Court, however, reduced Rockland's requested damages in accordance with its understanding that despite a contract for 69,908 pounds of antimony oxide at $2.54 per pound, Rockland had in fact paid only $2.06 and $2.11 per pound. *Id.* at 474. Finally, the Court, in its discretion, denied plaintiff's claim for prejudgment interest as inappropriate where the damages claimed were not liquidated or reduced to a sum certain prior to trial. *Id.* at 474.

The pending motion for reconsideration was filed on January 29, 1998, by Rockland, moving for reconsideration of the Court's January 15, 1998, decision awarding cover damages in the amount of $56,945.08 and denying Rockland's claim for prejudgment interest. The pending motion to alter and/or amend judgment and for reconsideration was filed on January 30, 1998, by Manley–Regan, moving for reconsideration of the Court's January 15, 1998 decision finding Manley–Regan was not excused from performance and entering judgment in favor of plaintiff.

### I.

The facts giving rise to this breach of contract action are fully stated in the Court's January 15, 1998 Opinion, *Rockland Industries, Inc. v. E+E (US) Inc., Manley–Regan*

*Chemicals Division*, 991 F.Supp. 468 (D.Md. 1998); and the Court finds it unnecessary to restate them in detail here. For purposes of the pending motions, however, the pertinent facts are briefly summarized where appropriate.

Rockland moves for reconsideration, first, on the ground that the Court mistakenly found Rockland paid $2.06 and $2.11 per pound for cover purchases of antimony oxide from Chi Mei instead of the contract price of $2.54 per pound. Manley–Regan and Rockland had entered into an agreed sole source contract for three containers (approximately 114,000 pounds) of antimony oxide, however, Manley–Regan's sole source, Allen Traiger of GFI, was unable to deliver. After Manley–Regan notified Rockland that it would be unable to supply the antimony oxide, Rockland sought to cover immediately. Rockland entered into a contract with ICC (Dunleary) on September 19, 1994, for 44,092 pounds of antimony oxide at $2.65 per pound, as reflected in purchase order 77397, to cover a portion of the three containers it expected to receive through Manley–Regan. On September 30, 1994, Rockland entered into a contract with Chi Mei for 88,184 pounds of antimony oxide at $2.54 per pound, as reflected on purchase order 77564, 69,908 pounds of which were to be applied to cover the Manley–Regan contract. Rockland then entered into a second contract with Chi Mei on December 7, 1994, for 88,184 pounds of antimony oxide at $2.49 per pound, as reflected on purchase order 78628; however, Rockland explains that this contract was unrelated to the substitute antimony oxide it purchased to cover for the Manley–Regan contract. According to Rockland, although it did pay Chi Mei for certain quantities of antimony oxide at $2.06 and $2.11 per pound, these prices paid were in connection with the second Chi Mei contract which did not constitute any part of Rockland's cover purchases. Rockland maintains it paid $2.54 per pound to Chi Mei consistent with the contract price reflected on purchase order 77564 for 69,908 pounds of antimony oxide to cover the Manley–Regan contract, and thus it is entitled to that portion of its cover damages calculated at $2.54 per pound.

Manley–Regan's response acknowledges Rockland's explanation regarding the Chi Mei purchase price, but attacks the reasonableness of Rockland's cover purchases. Manley–Regan contends that the prices paid for the antimony oxide in May and July of 1995, at $2.06 and $2 .11 per pound respectively indicate that $2.65 and $2.54 per pound paid by Rockland were unreasonably high prices. Furthermore, Manley–Regan seeks to show that Rockland's decision to cover immediately was unreasonable given the substantial quantity of antimony oxide available to Rockland at the time and the drop in antimony oxide prices by the spring of 1995.

■ As an initial matter, the Court finds defendant's reasonableness attack on Rockland's decision to cover and the prices paid for cover without merit. For the reasons stated in the Court's January 15, 1998 Opinion, Rockland's decision to cover was reasonable. Moreover, hindsight showing a drop in prices by early 1995, does not detract from the reasonableness of Rockland's business decisions at the time of the breach. Furthermore, the purchase prices of Rockland's cover were in line with the prevailing prices in the market at the time.

After reexamining the record, the Court concludes that it did err in finding Rockland only paid $2.06 and $2.11 for quantities of cover antimony oxide purchased from Chi Mei. As Rockland points out, purchase order 77564 dated September 30, 1994, relates to the cover purchase from Chi Mei in which Rockland did in fact pay $2.54 for 69,908 pounds of antimony oxide by two wire transfers. On the other hand, purchase order 78628 dated December 7, 1994, in which Rockland contracted with Chi Mei for antimony oxide at $2.49 per pound, is unrelated to the cover damages. Noting this error in calculating Rockland's cover damages in its January 15, 1998 Opinion and Judgment, the Court finds that the damage award should be increased by $32,265.04 to reflect the fact that Rockland paid $2.54 per pound according to purchase order 77564 for all 69,908 pounds purchased from Chi Mei. Accordingly, the Court will grant in part Rockland's motion for reconsideration and enter an order reflecting the correct amount of cover

damages as $89,210.12 to be awarded to Rockland.

In addition, Rockland moves for reconsideration of the Court's decision to deny prejudgment interest as part of plaintiff's damage award. Rockland claims that its requested cover damages of $89,910.12 were ascertainable with certainty prior to trial and it borrowed capital for the cover purchases at interest rates in excess of 6%. In response, Manley–Regan argues that Rockland did not identify prejudgment interest in discovery as a element of its recoverable damages and Rockland's damages claim was not liquidated prior to trial. The Court finds it inappropriate to revisit its decision on this issue where Rockland is simply restating its previous arguments. Hindsight does not disturb the Court's finding that prejudgment interest is not suitable in this case, and, accordingly, the Court will deny plaintiff's motion in this respect.

## II.

Manley–Regan moves to alter and/or amend judgment and for reconsideration on the ground that Manley–Regan had no obligation to seek alternative sources when the agreed sole source for the antimony oxide failed. In late June 1994, Manley–Regan and Rockland entered into a contract for three containers of antimony oxide. The Court found that both parties understood that Manley–Regan's sole source was Allen Traiger of GFI. On September 9, 1994, however, Manley–Regan's sales representative notified Rockland that the three containers were not coming. Manley–Regan did not thereafter seek an alternative supply source.

Manley–Regan argues that because this was an agreed sole source contract, the risk of nondelivery was assumed by the purchaser even where it was foreseeable that the sole source might fail. On reconsideration, Manley–Regan sets aside the commercial impracticbility defense provision of U.C.C. § 2–615 and argues instead that in an agreed sole source case, failure of the sole source is an absolute defense for the seller. According to Manley–Regan's theory, to hold otherwise would render sole source agreements mean-

ingless. In response, Rockland argues that as the purchaser, in entering into an agreed sole source contract where the risk of nondelivery was foreseeable to both parties, it did not tacitly assume any risk of nondelivery by the agreed sole source.

■ The Court finds Manley–Regan's revised agreed sole source defense as unpersuasive as its similar position at trial. As explained in the Court's January 15, 1998 Opinion, where there is an agreed sole source and it is foreseeable that the sole source may fail, the risk of nondelivery is on the seller unless the seller includes exculpatory language thereby expressly transferring the risk to the purchaser. *Rockland,* 991 F.Supp. at 470–73.

Manley–Regan's contention that *InterPetrol Bermuda Ltd. v. Kaiser Aluminum International Corp.,* 719 F.2d 992 (9th Cir. 1983), supports its theory of the agreed sole source defense is erroneous. The Ninth Circuit in *InterPetrol Bermuda Ltd.* held that the commercial impracticability defense of U.C.C. § 2–615 was applicable to an agreed sole source contract "only when the events that made the performance of the contract impracticable were foreseen at the time the contract was executed." *Id.* at 999. The Court found that the seller was excused from performance, however, because the parties had agreed to a force majeure clause excusing the seller from performing if its source failed. *Id.* at 1000. This is not the case here. Manley–Regan failed to include any exculpatory or conditional language in the agreed sole source contract to shift the risk to the purchaser. Presumably, had there been no force majeure clause, the *InterPetrol Bermuda Ltd.* court would have found the seller liable for the breach because the risk of nondelivery was foreseeable at the time of contracting. *See id.* at 999–1000. The existence of an agreed sole source provision in a contract where nondelivery is foreseeable does not alone shift the risk of nondelivery to the purchaser. Rather, the seller must also *condition its ability* to obtain goods from the agreed sole source through an exculpatory provision to transfer risk to the purchaser. *Id.* at 999. Manley–Regan essentially concedes this point in its brief. Brief of Defen-

dant at 3 ("*[W]hen a seller conditions its performance* on its ability to obtain goods from a specific supplier, the seller is excused if the supply fails." (emphasis added)).

In this case, there is no conditional or exculpatory provision; therefore the risk of nondelivery did not shift to Rockland where it was clear to both parties at the time of contracting that the agreed sole source might fail due to a tight market. Accordingly, the Court will deny defendant's motion.

### III.

For all the foregoing reasons, the Court will grant in part and deny in part Rockland's Motion for Reconsideration and deny Manley–Regan's Motion to Alter and/or Amend Judgment and for Reconsideration. A formal order will be entered in conformity with this opinion.

### ORDER

In accordance with the Court's Opinion filed herein on this date, IT IS, this 9th day of April, 1998, by the United States District Court for the District of Maryland,

ORDERED:

(1) That Plaintiff's Motion for Reconsideration (Paper 57), filed on behalf of Rockland Industries, Inc., BE, and the same hereby IS, GRANTED IN PART AND DENIED IN PART as follows:

(a) The motion is GRANTED as to the increase in the amount of cover damages;

(b) The motion is DENIED as to pre-judgment interest;

(2) That Defendant's Motion to Alter and/or Amend judgment and for Reconsideration (Paper 58) filed on behalf of E + E (US) Inc., Manley–Regan Chemicals Division, BE, and the same hereby IS, DENIED;

(3) That the Clerk shall mail a copy of this Order forthwith to counsel of record.